No. 106,284

In the Matter of SHELLEY KURT BOCK, *Respondent*.

(265 P.3d 552)

Opinion filed December 2, 2011.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., Topeka, argued the cause, and *Shelley Kurt Bock*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Shelley Kurt Bock, of Lawrence, an attorney admitted to the practice of law in Kansas in 1979.

On October 8, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). An amended formal complaint was filed on October 12, 2010. The respondent filed an answer on November 29, 2010. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on December 9, 2010, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2010 Kan. Ct. R. Annot. 406) (competence); 1.3 (2010 Kan. Ct. R. Annot. 422) (diligence); 1.4 (2010 Kan. Ct. R. Annot. 441) (communication); 3.2 (2010 Kan. Ct. R. Annot. 539) (expediting litigation); 8.1(b) (2010 Kan. Ct. R. Annot. 594) (failure to respond to lawful demand for information from disciplinary authority); and Kansas Supreme Court Rule 207(b) (2010 Kan. Ct. R. Annot. 308) (failure to cooperate in disciplinary investigation). The respondent also violated the terms and conditions of his probation, as ordered by this court in its order of February 1, 2008.

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"2.    On February 1, 2008, following a disciplinary proceeding, the Kansas Supreme Court placed the Respondent on probation for three years. The Court detailed the terms and conditions of the Respondent's supervised probation in its opinion. *In re Bock*, 285 Kan. 815, 175 P.3d 233 (2008).

### "DA10958

"3.    In April 2009 Jane Fortin retained the Respondent to expunge her son's criminal convictions. The Respondent investigated the matter and determined that Mr. Fortin had five criminal cases to expunge. The Respondent determined that Mr. Fortin had completed the terms of the cases and all five cases were appropriate and time-ready for expungement. The Respondent informed Mrs. Fortin that the filing fees associated with the expungement cases totaled $500. Mrs. Fortin provided the Respondent with $500 for the filing fees associated with expunging the convictions from five cases.

"4.    The Respondent scheduled a meeting with Mr. Fortin. Mr. Fortin appeared at the appointed time in the Respondent's office. Mr. Fortin waited for two hours for the Respondent to appear. After waiting, Mr. Fortin was told that the Respondent was out of the country.

"5.    Mr. Fortin repeatedly called the Respondent for update[s] regarding the expungement process. The Respondent failed to return Mr. Fortin's telephone calls and failed to take any action in his behalf.

"6.    In the fall of 2009 Mr. Fortin enlisted the assistance of his sister, Joanie Peterson, a Missouri attorney. Ms. Peterson repeatedly contacted the Respondent. The Respondent did not return Ms. Peterson's telephone calls.

"7.    In November 2009 Ms. Peterson filed a complaint against the Respondent. On December 3, 2009, the Disciplinary Administrator docketed the complaint for investigation. Thereafter, Sherri Loveland, the Chairman of the Douglas County Ethics and Grievance Committee and the attorney assigned to investigate Ms. Peterson's complaint, contacted the Respondent and urged him to complete the expungement cases.

"8.    After the complaint was filed, the Respondent began working on Mr. Fortin's expungement cases. He determined that Mr. Fortin had not complied with all of the terms of the cases, in that, Mr. Fortin continued to owe nearly $500 in fees and costs in one of the cases and that there were eight criminal cases to expunge rather than five.

"9.    In late January 2010 the Respondent filed the petitions for expungement. However, the cases were not time-ready for expungement until March 1, 2010. Thereafter, on March 12, 2010, the court expunged Mr. Fortin's criminal convictions.

### "DA10989

"10.    The Douglas County District Court appointed the Respondent to serve

on its juvenile panel in the 1980's. The Respondent continuously served on that panel. As a member of the juvenile panel, the Respondent was regularly appointed to represent parents in child in need of care cases, serve as guardian *ad litem* for the children in need of care, and represented juveniles in juvenile offender cases.

"11.  Every Friday, all juvenile panel attorneys receive electronic mail messages with the calendar for their hearings and citizen review board meetings scheduled for the following week. In addition, standard notices of hearing are sent for each case, subsequent hearing dates are announced at the conclusion of each hearing and meeting, and subsequent hearing and meeting dates appear in court orders.

"Representation as Guardian *ad Litem* for J.P., A.D., and A.T.

"12.  On September 8, 2009, the mother's attorney in a child in need of care case, requested that the children, ages 4, 9, and 10, be present in court for the next hearing, scheduled for October 20, 2009. The judge indicated that the Respondent, as guardian *ad litem*, would have input as to whether that was appropriate. The CASA [court appointed special advocate] thought that court attendance could be traumatic for the children.

"13.  On September 12, 2009, the CASA visited with J.P., the oldest child, about the court process. The CASA sent the Respondent an electronic mail message regarding her conversation with J.P. The CASA explained that she did not have the same conversation with A.T., due to her age and she did not have the same conversation with A.D. due to her mental health issues. The CASA suggested that the Respondent visit with J.P. to determine whether J.P. should participate in the court process. The Respondent did not respond to the CASA's electronic mail message.

"14.  The case manager set up a meeting with the Respondent, the CASA, the parent educator in the case, and J.P.'s therapist to discuss the children's court attendance and parental visits. The case manager sent several electronic mail messages to the Respondent attempting to schedule the meeting. The Respondent did not respond.

"[15].  The case manager saw the Respondent in the courthouse a few days later and asked the Respondent if he could attend a meeting on September 19, 2009, at 1:00 p.m. The Respondent indicated that he would be able to attend the meeting. The Respondent, however, failed to appear at the meeting.

"[16].  At the time the meeting began, the case manager attempted to contact the Respondent by telephone. The Respondent's voice mail box was full and the case manager was unable to leave a message for the Respondent.

"[17].  The case manager postponed the meeting to September 23, 2009, because the Respondent's presence was necessary. The Respondent appeared at the September 23, 2009, meeting.

"[18].  During the September 23, 2009, meeting, the parties scheduled a meeting between the Respondent and J.P. for October 11, 2009.

"[19]. On October 11, 2009, the CASA picked up J.P. and A.T. from their foster home and drove them to the Kaw Valley office for the meeting with the Respondent. The CASA explained to J.P. that the Respondent was her attorney and she was excited about the meeting. The Respondent failed to appear at the meeting again.

"[20]. The case manager attempted to contact the Respondent by telephone. However, the Respondent did not answer his telephone.

"[21]. The next day, the CASA sent the Respondent an electronic mail message. The CASA explained how disappointed the children were. The CASA requested that the Respondent contact her to discuss the situation as the court date was scheduled for October 20, 2009. The Respondent responded to the electronic mail message promising to call her the next day. The Respondent did not call the CASA the next day.

"[22]. On October 19, 2009, the CASA sent the Respondent another electronic mail message because the Respondent had not called as promised. The CASA learned that the Respondent scheduled a meeting with the children in the foster home for one evening at 7:00 p.m. The Respondent called from a soccer game at 7:30 p.m. to say he was running late. The Respondent arrived at the foster home at 8:30 p.m. and stayed until nearly 10:30 p.m., meeting with the 4-year-old and the 10-year-old.

"23. Pursuant to federal law, the court scheduled a permanency hearing for J.P., A.D., and A.T., for November 13, 2009. On October 28, 2009, the court sent the notice of hearing to the Respondent. Additionally, the previous week, the court sent the Respondent a list of hearings and meeting[s] scheduled for the following week.

"24. On November 13, 2009, the mother, her attorney, two of the fathers (one in custody), their attorneys, an Assistant District Attorney, the CASA, witnesses, and the judge were present for the permanency hearing. The Respondent, as guardian *ad litem*, failed to appear. One of the attorneys had seen the Respondent outside his office. The attorneys and court staff members repeatedly attempted to contact the Respondent by telephone without success.

"25. Later, an attorney went to the Respondent's office. She asked him whether he was coming to the hearing. He asked, "what hearing?" She told him and he asked, "when was it set?" The Respondent left his office without his file and came to court. By the time the Respondent arrived, there was insufficient time for the permanency hearing. The Court rescheduled the hearing to November 16, 2009.

"26. The Respondent appeared at the November 16, 2009, hearing.

"27. On December 15, 2009, the Honorable Robert Fairchild, Chief Judge of the Douglas County District Court, met with the Respondent to discuss how he planned to improve his calendaring problems.

"Representation of K.W.

"28. In an unrelated case, the Respondent served as guardian *ad litem* for

K.W. On September 15, 2009, the Court held a hearing regarding K.W. The Respondent appeared with K.W. for the September 15, 2009, hearing. At the conclusion of the September 15, 2009, hearing, the judge announced that the next hearing regarding K.W. would be December 16, 2009.

"29.    On December 16, 2009, the day after his admonition from the Chief Judge of the Douglas County District Court, the Respondent failed to appear in court at the scheduled time in behalf of K.W. The director of the citizen review board called the Respondent's office telephone number and his mobile telephone number without success. Additionally, the director sent the Respondent an electronic mail message regarding the hearing. Thirty-five minutes after the hearing was scheduled to begin, the Respondent appeared. The Respondent indicated to the director that he had calendared the hearing for December 17, 2009, rather than December 16, 2009.

"30.    The Respondent had no contact with K.W. from September 15, 2009, to December 16, 2009.

"31.    On January 21, 2010, the Honorable Jean F. Shepherd filed a complaint with the Disciplinary Administrator's office.

"32.    On January 27, 2010, the Disciplinary Administrator docketed the complaint for investigation, wrote to the Respondent, and directed the Respondent to provide a written response to the complaint within 20 days.

"33.    Thereafter, Ms. Loveland and Kenneth P. Kula, an attorney appointed to investigate the complaint, repeatedly wrote to the Respondent directing him to provide a written response to the complaint filed by Judge Shepherd. The Respondent never provided the written response.

"DA11056

"34.    The Court appointed the Respondent to represent two Spanish speaking criminal defendants, Enedino Landa Aparicio and Anibal Altamirano.

"35.    On August 4, 2009, Mr. Aparicio applied for and was approved for diversion. On August 8, 2009, the District Attorney's office notified the Respondent that Mr. Aparicio's diversion agreement was ready to be signed.

"36.    On August 5, 2009, Ms. Altamirano applied for and was approved for diversion. On August 6, 2009, the District Attorney's office notified the Respondent that Ms. Altamirano's diversion agreement was ready to be signed.

"37.    Both defendants appeared in court with the Respondent on August 18, 2009. At that time, the Respondent indicated that a diversion agreement would be submitted that day on each case. As a result of the Respondent's representation, no further hearing was scheduled.

"38.    On November 18, 2009, the District Attorney's office notified the Respondent that the diversion agreements had not been received.

"39.    In February 2010 the judge's assistant discovered that the diversion agreements were never filed. Thereafter, on February 26, 2010, the District Attorney's office filed motions to reinstate the prosecution and the cases were placed back on the court's calendar.

"40.   The Court scheduled the cases for March 26, 2010. The Court gave the Respondent 23 days notice of the hearings. The Respondent did not inform the Court that he would be unable to appear at the time. The Respondent did not appear. Following the hearing, the Respondent did not contact the Court to explain his absence. A bench warrant was issued for the Respondent's clients.

"41.   On April 1, 2010, the Honorable Peggy C. Kittel filed a complaint against the Respondent for his failure to appear in court in behalf of Mr. Aparicio and Ms. Altamirano.

"42.   On April 12, 2010, the Disciplinary Administrator docketed the complaint for investigation, wrote to the Respondent, and directed him to file a written response to the complaint within 20 days.

"43.   Thereafter, Ms. Loveland and Mr. Kula wrote to the Respondent on multiple occasions directing him to provide a written response to Judge Kittel's complaint. The Respondent never provided a written response to the complaint filed by Judge Kittel.

### "DA11143

"44.   In June 2009 Richard T. Rodriquez retained the Respondent to represent him in a criminal case pending in Douglas County District Court. In August 2009 Antonio C. Salas retained the Respondent to represent him in a criminal case pending in the Douglas County District Court. The two cases are not related. However, a Spanish speaking interpreter was necessary whenever either case was scheduled for hearing.

"45.   On November 24, 2009, both defendants entered pleas in the cases and sentencing hearings were scheduled before the Honorable Michael C. Malone for January 8, 2010, in each case. Both defendants and the interpreter appeared at the time of the scheduled sentencing hearings. The Respondent, however, failed to appear at the scheduled sentencing hearings.

"46.   On January 13, 2010, Judge Malone cited the Respondent for contempt of court for failing to appear for the sentencing hearings. On February 4, 2010, the Court took up the order to show cause why the Respondent should not be held in contempt of court. During that hearing the Respondent stated as follows:

'MR. BOCK: Your Honor, I think that the court clearly is with justification on that opinion. I had made an error in my calendaring, and I was actually in Leavenworth County that date for a preliminary hearing.

'I should not trust myself in thinking I have any Friday afternoon available. I was up there for that hearing, and did not note it on my calendar, and it was clearly my error.

'I had gone from using a Blackberry to written documentation for calendaring, and now I'm so paranoid about dates that I check twice, Full Court and daily the court's docket sheets that appear outside. Quite honestly, it is—it is my error.

'THE COURT: How did this slip through? I don't understand it. Because I'll comment on that in a moment, but I want to know.

'As I recall, I thought you were here that day for some event. Of course, you saw—I don't know if you saw the calendar, but the calendar was visible for you to see, if you hadn't checked your Blackberry.

'MR. BOCK: I was here in the morning, and then I had a scheduled preliminary hearing in the afternoon in Leavenworth County.

'THE COURT: Uh-huh.

'MR. BOCK: And I made a special effort to get up there and make certain that I was there timely and everything for that, and it was a contested matter. And I don't know how I missed that.

'But I think that there may have been—I checked on Full Court previously, and due to the fact that I made my entry without filing a written entry of appearance, it did not get recorded on Full Court and show my name. Otherwise, I would have caught it. And I realize that was an error that I did and something that I need to change, as opposed to merely entering one's appearance in court.

'THE COURT: Okay. When did you realize that you had missed the court appearances? Did your clients contact you, was it my assistant contacting you, or did it just come to your attention?

'MR. BOCK: I had numerous telephone calls after four o'clock on that Friday, as I was driving back and could not get here. It was like 4:20 or so that afternoon, and I go—no, it was later than that, Your Honor. It was later than that.

'THE COURT: But it was my assistant or some—

'MR. BOCK: From your assistant. From various people, like the office receptionist.

'THE COURT: Like who?

'MR. BOCK: The office receptionist.

'THE COURT: Okay. Because my assistant tried to contact your office, too.

'MR. BOCK: I turned my phone off. Being in a foreign court, I didn't even have it on vibrate—

'THE COURT: That's a wise thing.

'MR. BOCK: —because I didn't want to be executed

'THE COURT: Well, no.

'MR. BOCK: —or run afoul of any problems there. And so through no checking and then having the phone off, I erred.

'THE COURT: Okay. Thank you, Mr. Bock. Anything else you wish to say before I—I do find you in contempt of court for failing to appear when so ordered—when so ordered. Do you have anything else you wish to say in mitigation?

'MR. BOCK: Subsequent to that time, Your Honor, I've initiated a more Draconian effort at calendaring, and it is—I think the court has observed me on many occasions throughout the years in this court and this division as not to have made that a common practice. And in many cases, I've covered for other people who are late, not here, and assisted. I don't want to make excuses and don't intend to make excuses, Your Honor.

'THE COURT: All right. Thank you, Mr. Bock.'

The Court found the Respondent in contempt of court and admonished him to appear in court for all scheduled hearings in the future.

"47.    Charles A. Briscoe, a Lawrence attorney, succeeded James George in supervising the Respondent while on probation. In a November 22, 2010, report, Mr. Briscoe recounts his investigation of the Respondent's statements to Judge Malone as follows:

'. . . I eventually determined [the Respondent] did have a court appearance before Judge Sundby in Leavenworth on January 8, 2010. I called Judge Sundby and confirmed [the Respondent] was in court on January 8, 2010, but the court appearance was at 1:30 p.m. Judge Sundby said the court appearance lasted about thirty to forty-five minutes, giving [the Respondent] adequate time to travel back to Lawrence for the appearance at 4:00 p.m. before Judge Malone. In short, [the Respondent] was less than truthful in his statements to Judge Malone on February 4, 2010.'

"48.    Ms. Loveland forwarded a copy of the transcript from the contempt proceedings to the Disciplinary Administrator. Based upon the transcript, on June 30, 2010, the Disciplinary Administrator docketed a complaint against the Respondent. The Disciplinary Administrator directed the Respondent to provide a written response to the complaint within 20 days. The Respondent never provided a written response to the complaint.

"[49].    On July 26, 2010, the Respondent and the Disciplinary Administrator entered into a memorandum of understanding which provided:

'1.    Shelley Bock will consent to be temporarily suspended from the practice of law in Kansas on September 3, 2010.

'2.    Shelley Bock will notify the district court judges in Douglas County, Kansas, of the pending temporary suspension.

'3.    Shelley Bock will notify all of his clients of the fact that he will be temporarily suspended from the practice of law on September 3, 2010.

'4.    Shelley Bock will start the process of withdrawing from all active cases where he is representing clients.'

"[50].    Pursuant to the agreement of the parties, on September 8, 2010, the Court entered an order of temporary suspension.

## "CONCLUSIONS OF LAW

"1.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1(b), and Kan. Sup. Ct. R. 207(b), as detailed below.

"2.   Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to represent Mr. Fortin, J.P., A.D., A.T., K.W., Mr. Aparicio, and Ms. Altamirano with reasonable thoroughness and preparation. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3.   Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his client(s) in this case. The Respondent failed to provide diligent representation to Mr. Fortin, J.P., A.D., A.T., K.W., Mr. Aparicio, Ms. Altamirano, Mr. Rodriquez, and Mr. Salas. Because the Respondent failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.3.

"4.   KRPC 1.4 provides:

'(a)   A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

'(b)   A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

What is required by KRPC 1.4 is reasonable communication. An attorney is required to adequately and reasonably communicate with his client. In this case, the Respondent violated KRPC 1.4 when he failed to keep Mr. Fortin, J.P., A.D., A.T., K.W., Mr. Aparicio, and Ms. Altamirano informed regarding their representations. Many, many calls went unanswered.

"5.   In addition to KRPC 1.3, Kan. Sup. Ct. Admin. Order No. 100, guidelines for guardians *ad litem*, also requires the Respondent to maintain communication with his wards. Specifically, that administrative order provides:

'A guardian *ad litem* should:

'(1)   Conduct an independent investigation consisting of the review of all relevant documents and records including those of social service agencies, police, courts, physicians (including mental health), and schools. Interviews either in person or by telephone with the child, parents, social workers, relatives, school personnel, court appointed special advocates (CASAs), caregivers, and others having knowledge of the facts are recommended. Continuing investigation and ongoing contact with the child are mandatory.

. . . .

'(5)   Explain the court proceedings and the role of the guardian *ad litem* in terms the child can understand.'

Thus, with respect to J.P., A.D., A.T., and K.W., the Respondent's obligation to adequately communicate with his clients is specifically delineated in Kan. Sup. Ct. Admin. Order No. 100.

"6. Finally, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.4 by failing to adequately communicate with Mr. Fortin, J.P., A.D., A.T., K.W., Mr. Aparicio, and Ms. Altamirano.

"7. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The Respondent caused unnecessary delay in J.P., A.D., and A.T.'s case, in K.W.'s case, in Mr. Aparicio's case, and in Ms. Altamirano's case. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"8. Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to forward a written response to the initial complaints—he had been repeatedly instructed to do so in writing by the Disciplinary Administrator, Ms. Loveland, and Mr. Kula. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by Judge Shepherd and Judge Kittel, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"9. On February 1, 2008, the Court issued its opinion, placing the Respondent on three years' supervised probation. The Court's order included the following:

'IT IS THEREFORE ORDERED that Shelley Kurt Bock be suspended from the practice of law for a period of 3 years in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R. Annot. 261). His suspension is stayed, and he is placed on 3-years' supervised probation on the following terms and conditions:

. . . .

10. Procedures shall be commenced whereby all phone contacts and phone messages are handled on a daily basis, unless a trial schedule prevents phone contacts with clients. No phone message, request, or entreaty from a client shall go more than 3 days without Bock contacting the client.

. . . .

14. Bock shall file with the Disciplinary Administrator written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken repre-

sentation. He shall modify that procedure if directed to do so by the Disciplinary Administrator.

15. Bock shall follow all written office procedures.

16. Bock shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requires any further information, Bock shall timely provide such information.

. . . .

18. Bock shall not violate the terms of his probation or the provisions of the KRPC. In the event that Bock violates any of the terms of his probation or any of the provisions of the KRPC during the probationary period, Bock shall immediately report such violations to his supervising attorney and to the Disciplinary Administrator.'

By engaging in misconduct and by violating KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1, and Kan. Sup. Ct. R. 207, the Respondent also violated the terms and conditions of his probation.

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated*. The Respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. Further, the Respondent violated his duty to the legal system to expedite litigation. Finally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State*. The Respondent knowingly and admittedly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to his clients, the legal system, and the legal profession.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses*. The Respondent has been previously disciplined. First, on February 1, 2008, the Kansas Supreme Court placed the Respondent on supervised probation for a period of three years for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.16, and KRPC 3.2 in two separate cases. Additionally, on February 13, 2009, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.3, KRPC 1.4, KRPC 3.2, and KRPC 8.1 in two separate cases.

*"Dishonest or Selfish Motive.* The Respondent provided misleading information to Judge Malone. Accordingly, the Hearing Panel concludes that that portion of the Respondent's misconduct was motivated by dishonesty.

*"A Pattern of Misconduct.* The Respondent has engaged in a pattern of misconduct. Beginning in 2005 with the misconduct in the case that gave rise to the three year probation, and continuing to the present, the Respondent has engaged in similar misconduct and violated similar rules.

*"Multiple Offenses.* The Respondent committed multiple rule violations. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1, and Kan. Sup. Ct. R. 207. Accordingly, the Hearing Panel concludes that the Respondent committed multiple offenses.

*"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process.* The Respondent failed to provide written responses to the complaints in this case, save the complaint filed by Ms. Peterson. The Respondent was repeatedly instructed to provide written responses. The Respondent['s] repeated failure to provide written responses to the complaint amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

*"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process.* At the hearing on the Formal Complaint, the Respondent testified as follows:

'. . . The realization that the juvenile caseload was becoming difficult and eliminating that as of March 1st was a dramatic change in my caseload and my activities and—that would be March 1st of 2010 and that has been accomplished. Once that happened my overall capabilities improved and were heightened and I believe cause—I was much more—I felt much more in control of my life, in control of my schedule and addressed those calendaring issues.'

The Respondent's testimony left the impression that his departure from the juvenile panel was voluntary. However, that is not the case. On February 4, 2010, Judge Fairchild sent the Respondent a letter regarding his service on the juvenile panel. Judge Fairchild informed the Respondent that the Court would be holding a hearing on February 25, 2010, at 12:00 p.m. Judge Fairchild requested that the Respondent appear at that time. The Respondent failed to appear at the hearing. On March 1, 2010, the Douglas County District Court removed the Respondent from service on the juvenile panel. The Hearing Panel is troubled by the Respondent's attempt at deception through this testimony.

*"Vulnerability of Victim.* Mr. Fortin, J.P, A.D., A.T., K.W. Mr. Aparicio, Ms. Altamirano, Mr. Rodriquez, and Mr. Salas were vulnerable to the Respondent's misconduct.

*"Substantial Experience in the Practice of Law.* The Respondent has substantial experience in the practice of law. The Kansas Supreme Court admitted the Re-

spondent to the practice in 1979. At the time the misconduct began, the Respondent had been practicing for nearly 30 years.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent suffers from depression. It is clear that the Respondent's depression contributed to his misconduct.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent fully cooperated in the hearing and acknowledged his misconduct. The Respondent admitted the facts alleged in the Formal Complaint. Finally, the Respondent stipulated that he violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1, and Kan. Sup. Ct. R. 207.

"*Remorse.* At the hearing on the Formal Complaint, the Respondent expressed genuine remorse for having engaged in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.42   Suspension is generally appropriate when:
    (a)   a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
    (b)   a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'6.12   Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

'6.22   Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

'7.2   Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.2   Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be

indefinitely suspended. Respondent and his counsel recommended that the Respondent be suspended for a period of one year.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for an indefinite period of time.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent filed no exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2010 Kan. Ct. R. Annot. 344). We conclude the hearing panel's findings are supported by clear and convincing evidence. Thus, the only issue before us is the appropriate discipline.

At the hearing before this court, both the office of the Disciplinary Administrator and the respondent recommended indefinite suspension. The respondent has been disciplined previously on several occasions, including a 3-year probation in 2008, informal admonishment in 2009, and a temporary suspension in 2010. When these incidents are considered along with the respondent's multiple offenses in this case, including violations of KRPC 1.1, 1.3, 1.4, 3.2, 8.1(b), and Kansas Supreme Court Rule 207(b), we find indefinite suspension is the appropriate discipline.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that SHELLEY KURT BOCK be in-

definitely suspended from the practice of law in the state of Kansas, effective on filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370), and in the event respondent seeks reinstatement, he shall comply with Supreme Court Rule 219 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.